**NOT FOR PUBLICATION**

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY
---------------------------------------------------------X
                                        CHAPTER 11
In Re:

ROUTE 70 & MASSACHUSETTS, L.L.C.,        Case No.: 09-14771 (RG)


                        Debtor and
                  Debtor-in-Possession.
---------------------------------------------------------X
ROUTE 70 & MASSACHUSETTS, L.L.C.,

                          Plaintiff,
- against-
                                         Ad. Pro. No. 09-01473 (MBK)
THE BANK, a commercial bank chartered in the
State of New Jersey, et al.,


                        Defendants.
---------------------------------------------------------X
APPEARANCES:

Richard D. Trenk
Adam D. Wolper
Trenk, DiPasquale, Webster, Della Fera & Sodono, P.C.
347 Mount Pleasant Avenue
West Orange, New Jersey 07052
Attorneys for Plaintiff, Route 70 & Massachusetts, L.L.C.

George C. Werner
Scott F. Landis
James D. Donnelly
1236 Brace Road, Suite C
PO Box 536
Cherry Hill, New Jersey 08003
Attorneys for Defendants, The Bank, et. al.

**MICHAEL B. KAPLAN, U.S.B.J.**


                                        **OPINION**

I.   INTRODUCTION

This matter comes before the Court in relation to a Chapter 11 bankruptcy petition filed by the Debtor, Route 70 & Massachusetts LLC. Debtor, as Plaintiff, filed a Complaint against Defendant, The Bank ("Defendant"), seeking, *inter alia*, to avoid, as a fraudulent transfer, a mortgage granted from Debtor to The Bank. Presently before the Court are cross-motions, filed by Plaintiff and Defendant, seeking partial summary judgment on this claim and related claims.

The crux of Plaintiff's claim is that the grant of the mortgage was a fraudulent transfer because the proceeds of the associated loan were immediately paid by the Debtor to one of its founding members. Plaintiff's claim relies on the applicability of a doctrine known as "collapsing," whereby a court may view multiple transactions as an integrated whole for the purposes of a fraudulent conveyance analysis.

For the reasons set forth below, the Court determines that the "collapsing" doctrine does not apply on the facts of this case. As a result, Plaintiff's fraudulent conveyance claims are deficient as a matter of law. Accordingly, Plaintiff's motion for partial summary judgment is denied, and Defendant's cross-motion for partial summary judgment is granted.

II.  PROCEDURAL HISTORY/FACTS

Route 70 & Massachusetts LLC ("Debtor" or "Plaintiff") was formed in October 2006 by Mitchell Deutsch and Adrian Moscoguiri as a limited liability company under New Jersey Law. Debtor was intended to be a vehicle for owning and developing certain real estate ("the Property") located at the corner of Route 70 and Massachusetts Avenue in Toms River, New Jersey.

On December 22, 2006, Debtor acquired the Property from Mr. Moscoguiri and his family. The deed recording this transfer reflects a sale for the sum of $2 million. However, the

2

parties agree that the transfer involved two other components. The first was the conveyance of a $1.8 million interest in the Property held by Mr. Moscoguiri, transferred to Debtor as part of his initial membership contribution.[1] The second was a promissory note from Mr. Deutsch to Mr. Moscoguiri, in the approximate amount of $1 million. The promissory note represented part of Mr. Deutsch's capital contribution to Debtor, the remainder being comprised of the $2 million cash that Mr. Deutsch infused into the Debtor. Mr. Deutsch had obtained this cash by means of an unrelated loan from Bank of America, secured by unrelated assets.[2] Notably, the deed evidencing this transfer was not recorded until February 22, 2007.

On February 28, 2007, Debtor and Defendant entered into a loan agreement (the "mortgage loan") in the total amount of $6.44 million, of which only $3 million was advanced to Debtor at closing. The loan was secured by a mortgage on the Property. The $3 million advanced to Debtor was paid directly to Debtor's attorney. The funds were then disbursed to Mr. Deutsch to pay off his personal obligations incurred by him in providing his initial membership contributions – that is, to satisfy the promissory note and the Bank of America loan. This disbursement was structured as a loan (the "unsecured loan") from Debtor, as Mr. Deutsch signed a $3 million promissory note when he received the funds.

Debtor operates as a debtor-in-possession, now owned by Herkimer Investments, LLC ("Herkimer"). Herkimer became the sole member of the Debtor after acquiring Moscoguiri's interest as a result of a transfer arising from prior indebtedness.[3] Having failed to succeed in its ventures, Debtor filed for Chapter 11 bankruptcy on February 27, 2009.

---

[1] It appears that Mr. Moscoguiri also transferred some other property to Debtor, worth $1.2 million, in exchange for membership.

[2] Plaintiff alleges that this loan was fraudulently obtained. However, the source of these funds is immaterial to the matter before this Court.

[3] According to Defendant's filings and oral argument, Herkimer was a creditor of Debtor prior to acquiring Debtor, but after the loan transaction at issue. Plaintiff has not disputed this point. Deutsch and Mosciguiri no longer own membership interests in Plaintiff. Deutsch's interest in Plaintiff was abandoned to Moscoguiri by the trustee of

Debtor initiated this adversary proceeding on March 31, 2009. The complaint challenges various aspects of the February 2007 loan transaction. Presently before the court is Debtor's motion for partial summary judgment on counts two, four, six and seven. Counts two and four seek to avoid the granting of the mortgage as a fraudulent transfer under either § 548 or New Jersey state law (as applied under § 544(b)). Counts six and seven seek to challenge the validity of Defendant's proof of claim and its mortgage lien; accordingly, these counts are dependent on the success of either count two or four. Defendant challenges Plaintiff's fraudulent transfer allegations and has filed a cross-motion for summary judgment with respect to counts two, four, six and seven.[4]

Oral argument on the motions was held on August 23, 2010. At the conclusion of the hearing, the Court took the matter under advisement and reserved decision. After reviewing the parties' submissions and applicable law, the Court is prepared to rule.

## III.    JURISDICTION

The Court has jurisdiction over the underlying case under 28 U.S.C. §§ 1334(a) and 157(a) and the Standing Order of the United States District Court, dated July 10, 1984, referring all bankruptcy cases to the bankruptcy court. Venue is proper in this Court pursuant to 28 U.S.C. § 1409(a). This matter is a core proceeding within the meaning of 28 U.S.C. §§ 157(b)(2)(H) &

---

Deutsch's bankruptcy estate, *see* Consent Order Authorizing the Trustee to Transfer Interest to and Settle with Adrian Moscoguiri Pursuant to 11 U.S.C. §§ 363(b),(f), and (m), *In re Deutsch*, No. 07-23109 (Bankr. D.N.J. July 15, 2008). Moscoguiri's interest was then transferred to Herkimer Investments, LLC after Moscoguiri defaulted on a personal guarantee.

[4] The Court notes that Defendant's Cross-Motion for Summary Judgment is not expressly limited to the counts in Plaintiff's motion. However, the motion incorporates Defendant's opposition to Plaintiff's motion, and it contains legal arguments and facts directed primarily at the counts raised by Plaintiff's motion. Thus, to the extent Defendant intended to request summary judgment on any other count, the Court finds that Defendant has failed to carry its burden of demonstrating the absence of a genuine issue of material fact.

(K). The statutory predicate for the relief sought herein is 11 U.S.C. § 548 (a)(1)(B)[5] and N.J. STAT. ANN. § 25:2-25b (through 11 U.S.C. § 544(b)).

## IV. DISCUSSION

### A. Summary Judgment Standard

Summary judgment is appropriate where "the pleadings, the discovery, and disclosure materials on file, and any affidavits show there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).[6] As the Supreme Court has indicated, "Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy, and inexpensive determination of every action.'" Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986) (citing Fed. R. Civ. P. 1). In deciding a motion for summary judgment, the judge's function is to determine if there is a genuine issue for trial. Josey v. John R. Hollingsworth Corp., 996 F.2d 632, 637 (3d Cir. 1993).

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. Huang v. BP Amoco Corp., 271 F.3d 560, 564 (3d Cir. 2001) (citing Celotex Corp., 477 U.S. at 323). In determining whether a factual dispute warranting trial exists, the court must view the record evidence and the summary judgment submissions in the light most favorable to the non-movant. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). Issues of material fact are those "that might affect the outcome of the suit under the governing law." Id.

---

[5] Absent contrary indication, all "Code," chapter, and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101—1330 as amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), Pub. L. 109-08, 119 Stat. 23.

[6] Rule citations refer to the Federal Rules of Civil Procedure in effect on August 23, 2010, when the instant motion was argued. Thus, they do not reflect amendments that became effective on December 1, 2010, before the motion was decided. However, the outcome of the motion would not change if the amended rules were used.

at 248. An issue is genuine when it is "triable," that is, when reasonable minds could disagree on the result. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citations omitted). If the moving party will bear the burden of persuasion at trial, the party must support its motion with credible evidence - using any of the materials specified in Rule 56(c) - that would entitle it to a directed verdict if not controverted at trial. Celotex Corp., 477 U.S. at 331. Such an affirmative showing shifts the "burden of production" to the party opposing the motion and requires the party to either demonstrate the existence of a "genuine issue" for trial or to request additional time for discovery under Fed. R. Civ. P. 56(f). Fed. R. Civ. P. 56(e).

Once the moving party establishes the absence of a genuine issue of material fact, however, the burden shifts to the non-moving party to "do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita, 475 U.S. at 586. A party may not defeat a motion for summary judgment unless it sets forth specific facts, in a form that "would be admissible in evidence," establishing the existence of a genuine issue of material fact for trial. Fed. R. Civ. P. 56(e) (providing that in response to a summary judgment motion the "adverse party may not rest upon the mere allegations or denials of [its] pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial"). See also Fireman's Ins. Co. of Newark, N.J. v. DuFresne, 676 F.2d 965, 969 (3d Cir. 1982); Olympic Junior, Inc. v. David Crystal, Inc., 463 F.2d 1141, 1146 (3d Cir. 1972). If the nonmoving party's evidence is a mere scintilla or is not "significantly probative," the court may grant summary judgment. Liberty Lobby, Inc., 477 U.S. at 249-50. The non-movant will prevail only if the evidence produced is of "sufficient quantum and quality" to allow a rational and fair-minded fact finder to return a verdict in his favor, bearing in mind the applicable standard of proof that would apply at trial on the merits. Id. at

249. The submissions of both parties note the absence of disputed facts and urge the Court to determine this matter at this stage of the proceedings.

### B. Relevant Legal Standards

#### 1. Fraudulent Conveyances

As noted above, Plaintiff's motion seeks to establish a claim for avoidance of the mortgage as a fraudulent conveyance under either § 548(a)(1)(B) or under New Jersey law, as applied through § 544(b). The Bankruptcy Code authorizes a trustee to avoid transfers by the debtor in the 2 year period prior to bankruptcy where the debtor

> (i) *received less than a reasonably equivalent value in exchange for such transfer or obligation*; and
> (ii)   (I) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation;
>    (II) was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with the debtor was an unreasonably small capital;
>    (III) intended to incur, or believed that the debtor would incur, debts that would be beyond the debtor's ability to pay as such debts matured; or
>    (IV) . . . .

11 U.S.C. § 548(a)(1)(B) (emphasis added). As a debtor-in-possession, Plaintiff has standing to raise this § 548 claim under 11 U.S.C. § 1107, which grants debtors-in-possession "all the rights . . . and powers . . . of a trustee serving in a case under this chapter." Id.

Section 544(b)(1) allows the trustee to set aside transfers avoidable under applicable state law. See VFB LLC v. Campbell Soup Co., 482 F.3d 624 (3d Cir. 2007) (applying state fraudulent transfer law under § 544(b)(1)). Here, Plaintiff seeks to apply New Jersey law, which provides:

7

> A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:
> . . .
> b. *Without receiving a reasonably equivalent value in exchange for the transfer or obligation*, and the debtor:
> (1) Was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or
> (2) Intended to incur, or believed or reasonably should have believed that the debtor would incur, debts beyond the debtor's ability to pay as they become due.

N.J. STAT. ANN. § 25:2-25b (emphasis added).

As debtor-in-possession, Plaintiff may have standing to raise the state law claim under § 544 (by way of § 1107), but only if there exists an "actual creditor holding an unsecured claim who could have avoided the transfer under state law." Schaps v. Bally's Park Place, Inc., 58 B.R. 581, 584 (E.D. Pa. 1986), aff'd without opinion, 815 F.2d 693 (3d Cir. 1987). Because the trustee's rights are derivative of the state law rights of such an existing creditor, it is "crucial" that defendants have "proper notice of the identity of the alleged creditor in order that they might confirm or deny the validity of that entity's claim." Kaliner v. Load Rite Trailers (In re Sverica Acquisition Corp.), 179 B.R. 457, 464-465 (Bankr. E.D. Pa. 1995). That is, many courts require specificity in pleading the identity of the creditor whose rights are being asserted. Id. While some courts do not require this specificity at the motion-to-dismiss stage of proceedings, they do at least require an allegation that such a creditor exists, as well as an eventual identification of the creditor. Giuliano v. U.S. Nursing Corp. (In re Lexington Healthcare Group, Inc.), 339 B.R. 570, 576 (Bankr. D. Del. 2006).

Here, Plaintiff has not even alleged the existence of such a creditor, though the Court recognizes that Plaintiff's controlling member was formerly such a creditor. While the Court

8

recognizes that Plaintiff's § 544(b) claims may present an issue of standing, whether or not Plaintiff has standing under § 544(b) does not affect the Court's decision at this juncture.

### 2. Reasonably Equivalent Value and "Collapsing"

To successfully avoid the mortgage under a fraudulent transfer approach, Plaintiff must show that Debtor did not receive "reasonably equivalent value" in exchange for the mortgage grant. 11 U.S.C. § 548. To establish less than reasonably equivalent value, Plaintiff relies on the doctrine of "collapsing" to treat the mortgage loan and the subsequent unsecured loan of those proceeds to Mr. Deutsch as a single integrated transaction. Plaintiff's argument rests on this legal fiction because the Debtor did in fact receive the proceeds of the mortgage loan before disbursing them to Mr. Deutsch, and it cannot legitimately dispute that a $3 million loan is equivalent in value to a $3 million mortgage. Thus, Plaintiff is not entitled to relief under the text of the statutes, standing alone; rather, in order to prevail on the lack of reasonably equivalent value element of these statutory claims, Plaintiff must establish an equitable basis which supports such a finding.

As Plaintiff notes in its briefs, the Third Circuit has recognized a court's power to collapse multiple transactions into a single integrated transaction. See Voest-Alpine Trading USA Corp. v. Vantage Steel Corp., 919 F.2d 206, 212-213 (3d Cir. 1990); United States v. Tabor Court Realty Corp., 803 F.2d 1288, 1302 (3d Cir. 1986). These decisions, however, provide little guidance (beyond the facts of the cases themselves) as to when "collapsing" is appropriate. Inasmuch as courts within the Second Circuit have had more frequent occasion to apply the "collapsing" doctrine, its contours may be understood better by reference to opinions from those courts. See HBE Leasing Corp. v. Frank, 48 F.3d 623 (2d Cir. 1995); Orr v. Kinderhill Corp.,

9

991 F.2d 31 (2d Cir. 1993); Official Comm. of Unsecured Creditors v. JP Morgan Chase Bank, N.A. (In re M. Fabrikant & Sons, Inc.), 394 B.R. 721 (Bankr. S.D.N.Y. 2008).

The "collapsing" doctrine is essentially an equitable doctrine allowing a court to dispense with the structure of a transaction or series of transactions. See Orr, 991 F.2d at 35-36 (citing equitable language of Pepper v. Litton, 308 U.S. 295 (1939), to justify evaluating a fraudulent conveyance in context, "viewed as a whole with all its composite implications"). Under appropriate circumstances, the doctrine allows for multilateral transactions to be "collapsed" and treated as phases of a single transaction. HBE Leasing, 48 F.3d at 635. The "paradigmatic" factual context for application of the "collapsing" doctrine is as follows:

> one transferee gives fair value to the debtor in exchange for the debtor's property, and the debtor then gratuitously transfers the proceeds of the first exchange to a second transferee. The first transferee thereby receives the debtor's property, and the second transferee receives the consideration, while the debtor retains nothing.

Id. Under these circumstances, the "collapsing" doctrine may be used to avoid as fraudulent the initial transfer of the debtor's property to the first transferee, but only if two conditions are satisfied. Id. First, "the consideration received from the first transferee must be reconveyed by the debtor for less than fair consideration or with an actual intent to defraud creditors." Id. Second, "the transferee in the leg of the transaction sought to be voided must have actual or constructive knowledge of the entire scheme that renders her exchange with the debtor fraudulent." Id.

**C. Analysis**

Application of this equitable "collapsing" doctrine would be inappropriate in this case for at least two independent reasons. First, the Plaintiff has failed to demonstrate that creditors were harmed by the transaction, which is the equitable concern motivating the use of this doctrine.

10

Second, the doctrine should not be applied to collapse only certain transactions within a larger scheme of related transactions; instead the doctrine requires a fully holistic approach, which here supports Defendant's position. The Court will address both points in turn.

### 1. Equity Does not Demand Collapsing in the Absence of Harm to Creditors

The collapsing doctrine is most commonly applied to leveraged buyouts ("LBOs"). Fabrikant, 394 B.R. at 731. In these transactions, the primary concern is that shareholders are allowed to "cash out" their equity ahead of creditors, while allowing secured creditors to take their place, thereby improperly putting unsecured creditors at risk. See Moody v. Security Pac. Business Credit, 971 F.2d 1056, 1065 (3d Cir. 1992) (citing Mellon Bank, N.A. v. Metro Communications, Inc., 945 F.2d 635, 646 (3d Cir. 1991)).[7] This concern justifies courts' equitable solicitousness of creditors existing at the time of the challenged transaction. However, at least one leading commentary suggests that this concern is vitiated in the context of creditors arising after the challenged transaction, at least where its effects are public. See JAMES J. WHITE & RAYMOND T. NIMMER, CASES AND MATERIALS ON BANKRUPTCY 418-19 (3d ed. 1996). See also Kupetz v. Wolf, 845 F.2d 842, 848 (9th Cir. 1988) (declining to apply fraudulent conveyance law to an LBO transaction where trustee represented no creditors whose claims against the estate arose before the challenged transaction).

In the instant case, the transactions at issue are not a true LBO. However, because the transactions resulted in a "cash out" of equity, the LBO analysis is instructive. Here, any future creditor would surely have been on notice of the recorded mortgage and would therefore be

---

[7] Indeed, of the four Third Circuit opinions cited herein, three (Mellon, Moody, and Tabor) involved leveraged buyouts to the detriment of existing creditors, and the fourth (Voest-Alpine) involved a transaction specifically structured to escape the claims of a particular judgment creditor.

11

unharmed if unable to look to the property for satisfaction of obligations incurred by the Debtor after the challenged transaction.

To be sure, neither § 548 nor the New Jersey fraudulent conveyance statute is limited to existing creditors, and many courts have criticized the distinction between existing and future creditors, as well as the Ninth Circuit's approach in *Kupetz*, as an unsupportable deviation from applicable statutes. See Zahn v. Yucaipa Capital Fund, 218 B.R. 656, 668-670 (D.R.I. 1998) (Court disapproves Kupetz and the existing/future creditor distinction where a party sought to avoid a payment of funds by the debtor corporation to the purchaser in an LBO financed by that payment; party did not seek to avoid the grant of a lien to the lender sourcing those funds. Zahn v. Yucaipa Capital Fund (In re Almac's), 202 B.R. 648, 651 (D.R.I. 1996)); Brandt v. Hicks, Muse & Co. (In re Healthco Int'l, Inc.), 195 B.R. 971, 980 (Bankr. D. Mass. 1996) (criticizing existing/future creditor distinction and holding that future creditors have standing to raise fraudulent conveyance claims in LBO where the challenged transfer was a cash dividend to selling shareholders of purchased corporation); O'Donnell v. Royal Business Group (In re Oxford Homes), 180 B.R. 1, 5-6, 9 (Bankr. D. Me. 1995) (involving avoidance of a payment to selling shareholders in LBO, but not the lien-holders in the financing transaction).

However, the cited decisions criticize Kupetz and the existing/future creditor distinction in the context of the specific transactions at issue. The cases involve avoidance of the "cash-out" payment to selling equity-holders, not avoidance of the financing transaction. To the extent that courts are critical of the distinction made in Kupetz, they are critical of that court's deviation from a clearly applicable statute. This situation is distinguishable from the present case. Plaintiff here is not seeking avoidance on the terms of the statutes alone. To the extent that Plaintiff's claim depends on this Court's equitable power to collapse the transactions, the

equitable basis for doing so is tenuous where no existing creditor was harmed by the transaction. As between the Defendant bank and a creditor who was on notice of the mortgage, equity does not demand so drastic a measure as stripping Defendant of its collateral. As such, viewing the record in the light most favorable to the non-moving party, it does not appear that the Debtor had any creditors at the time of the challenged transaction. Accordingly, Plaintiff has failed to carry its burden of proof, leaving a genuine issue of material fact.

### 2. Holistic View of All Transactions Evinces Absence of Fraud

In the alternative, if the collapsing doctrine is germane, it should be applied holistically, in view of all related transactions. As noted above, "where a transfer is only a step in a general plan, the plan must be viewed as a whole with all its composite implications." Orr, 991 F.2d at 35 (internal quotations omitted). Here, Plaintiff asks the Court to ignore Mr. Deutsch's initial capital contribution and the substantial role in financing Debtor's acquisition of the Property. The relevant transactions involve not only the loan transaction and disbursement of proceeds to Mr. Deutsch, but also the formation of the Debtor and the initial sale of the Property.

Plaintiff cannot on the one hand enlist equity to collapse both the mortgage loan and the unsecured loan, while at the same time insist on honoring the separate structure of the associated sale and formation transactions. Plaintiff is mistaken in arguing that the collapsing doctrine may only be applied to a narrow set of paradigmatic transactions fitting the description outlined above. "[A] paradigm is simply an example – it does not, by itself, define the exclusive elements of a claim to recover a fraudulent transfer based on a 'collapsing' theory." Silverman v. K.E.R.U. Realty Corp. (In re Allou Distribs.), 379 B.R. 5, 21 (Bankr. E.D.N.Y. 2007) (citing "in equity" language from Orr while adopting a flexible, holistic, and equitable approach to

13

collapsing transactions in the context of fraudulent conveyance claims, though ultimately establishing guidelines not precisely apposite to the present matter).

Debtor's formation and purchase of the property can accurately be described as initiated through a capital contribution totaling $6 million (in the form of cash, a promissory note, and interests in real property), of which $4.8 million was used to purchase the property from the Moscoguiri family. After the challenged transactions, the Debtor was left holding the property subject to a mortgage securing $3 million of enterprise indebtedness, while still holding a $1.8 million equity interest in the property (at the time of the transaction, before the property declined in value), $1.2 million of other property (Mr. Moscoguiri's other membership contribution) and a $3 million promissory note representing Mr. Deutsch's membership contribution.

Under New Jersey law, the parties could have properly formed Debtor to achieve this result more directly. That is, Mr. Deutsch could have initially contributed his promissory note[8] and Debtor could have acquired the property with funds borrowed in its name and secured by a purchase money mortgage. Had the parties done so, Plaintiff would have no colorable claim. Essentially, Plaintiff is asking this Court to use equity to penalize Defendant for the structure of its transaction with the Debtor - not the result. This type of formalistic approach is fundamentally at odds with the nature of equitable remedies.

Where, as here, the series of separate transactions achieved a result that could have been properly achieved by a simpler transaction, equity would require this Court to view all the transactions as an integrated whole. That these transactions occurred so closely in time supports

---

[8] The contribution of a member to a limited liability company may be in cash, property or services rendered, or a *promissory note* or other obligation to contribute cash or property or to perform services. N.J. STAT. ANN. § 42:2B-32 (2010) (emphasis added).

aggregating them together in an equitable framework.[9] In either case, Plaintiff is not entitled to judgment as a matter of law. Indeed, as a matter of law, this analysis supports Defendant's cross-motion for summary judgment.

Alternatively, if Mr. Deutsch's promissory note is ignored as a worthless sham, the disbursement of proceeds from the mortgage loan may still have been proper, or at least of sufficient legitimacy to preclude a finding of fraud on the part of Defendant. Specifically, in the context of Mr. Deutsch's $3 million contribution to Debtor, the disbursement of mortgage loan proceeds may be characterized as a cash distribution. Under N.J. STAT. ANN. § 42:2B-42a, members of an LLC may receive distributions:

> to the extent that at the time of the distribution, after giving effect to the distribution, all liabilities of the limited liability company, other than liabilities to members on account of their limited liability company interests and liabilities for which the recourse of creditors is limited to specified property of the limited liability company, exceed the fair value of the assets of the limited liability company, except that the fair value of property that is subject to a liability for which the recourse of creditors is limited shall be included in the assets of the limited liability company only to the extent that the fair value of that property exceeds that liability.

Id. The typical nature of a distribution is the distribution of profits or the return of capital. RANDS, LLC v. Young (In re Young), 384 B.R. 94, 101 (Bankr. D.N.J. 2008). To be fair, in Young, the court refused to characterize certain improper transfers as distributions. However, those transfers are distinguishable from the transfer to Mr. Deutsch here. In Young, the transfers were alleged to be misappropriations, involving misrepresentations in the company's records and money paid for the benefit of the LLC and not deposited. Id. The court ultimately found that these disbursements were not distributions because they were not received in the member's capacity as a member or on account of being a member. Id. at 101-02.

---

[9] Indeed, as Defendant argues, the intended unity of these transactions is further supported by the delay in recording the transfer from the Moscoguiri family to Debtor.

Here, the proceeds of the mortgage loan were disbursed to Mr. Deutsch in his capacity as a founding member of the Debtor, on account of his initial membership contribution. The disbursement was properly documented and consented to by Mr. Moscoguiri, the other controlling member of the Debtor. Accordingly, even if the promissory note is ignored, the disbursement may properly be characterized as a distribution. There is no fraudulent conveyance where "the debtor retains the proceeds from the first exchange, [and] reconveys them for fair consideration, or uses them for some other legitimate purpose, including the preferential repayment of pre-existing debts." HBE Leasing, 48 F.3d at 635. A member distribution is not an improper purpose. Therefore, the disbursement to Mr. Deutsch was not fraudulent as a matter of law. To the extent that the distribution may have been improper under N.J. STAT. ANN. § 42:2B-42, Plaintiff's remedy is not to avoid Defendant's mortgage lien, but rather to seek recoupment of the disbursement from Mr. Deutsch under N.J. STAT. ANN. § 42:2B-42b or as a preference under § 547.[10]

### 3. Remaining Genuine Issues of Material Fact

Having determined that the collapsing doctrine is either inapplicable or insufficient to support Plaintiff's claims in counts two, four, six and seven, the Court concludes that Plaintiff cannot prevail on these claims as a matter of law and is thus prepared to grant Defendant's cross-motion for summary judgment. To the extent a subsequent reviewing court should be at variance with this Court's decision against recourse to the collapsing doctrine, the Court is compelled to note that there remain several critical areas of inquiry where the record does not support a finding by the Court as to the absence of genuine issues of material facts:

---

[10] The Court notes that the disbursement would only have been improper if Debtor had outstanding liabilities at the time of the transaction. This is consistent with the existing creditor argument outlined above.

### a. Defendant's Knowledge that Scheme was Fraudulent

As noted above, in order for the collapsing doctrine to bear upon this matter, the transferee in the transaction sought to be avoided must have had knowledge of the fraudulent scheme. That is, Defendant's mortgage lien may only be avoided if it had "actual or constructive knowledge of the entire scheme that renders [the] exchange with the debtor fraudulent." HBE Leasing, 48 F.3d at 635. "The existence of a knowledge requirement reflects the [Uniform Fraudulent Conveyance Act's] policy of protecting innocent creditors or purchasers for value who have received the debtor's property without awareness of any fraudulent scheme." Id. at 636. Thus, not only must Plaintiff demonstrate that Defendant knew of the scheme to disburse the mortgage loan proceeds to Mr. Deutsch, it must demonstrate that Defendant knew or should have known of such additional facts as required to make the scheme fraudulent.

While the former is essentially undisputed, the latter remains a genuine issue of material fact insufficiently established by Plaintiff. Indeed, the arguments presented above all support the contention that Defendant had no reason to suspect fraud. That is, Defendant's intent may well have been innocent, given the potential absence of other creditors at the time of the transaction, as well as the reasonableness of the Debtor's and Defendant's apparent treatment of the challenged transaction as part of the LLC formation and asset acquisition transactions.

### b. Insolvency/Insufficient Capitalization/Inability to Pay Debts

Next, it remains unclear whether Defendant had reason to believe that the scheme would leave the Debtor insolvent, insufficiently capitalized, or in a position to incur debts beyond its ability to pay, as required by the cited fraudulent conveyance statutes. Pointedly, Plaintiff has not alleged any facts to suggest that Debtor did not have the ability to use the remainder of the

17

property's equity – representing by the $1.8 million equity interest contributed by Mr. Moscoguiri – or the $1.2 million of other assets contributed by Mr. Moscoguiri, towards short-term operating expenses. For a land development venture such as contemplated by the Debtor, with little overhead or operating costs apart from professional fees, these assets or additional capital contributions may have been sufficient going forward.

### c. Senior Mortgage on Property

Finally, Plaintiff's own brief indicates that Mr. Deutsch's $1 million promissory note to the Moscoguiri family was secured by an unrecorded mortgage on the property. As New Jersey is a race-notice state, see N.J. STAT. ANN. § 46:22-1, Defendant would have been subordinated to an unrecorded mortgage if it had notice thereof. To the extent that the disbursement of loan proceeds to Mr. Deutsch allowed the Debtor to satisfy an existing encumbrance that would take priority over Defendant's mortgage lien, reasonably equivalent value was given. The extent of Defendant's knowledge of the Moscoguiri family's unrecorded mortgage presents another issue of material fact, both as to reasonably equivalent value and as to Defendant's knowledge that the scheme was fraudulent. Accordingly, Plaintiff has failed to establish the absence of a genuine issue of material fact as to Defendant's knowledge of the fraudulent nature of the scheme, even if it were "collapsed."

## V.    CONCLUSION

For the foregoing reasons, the Court finds that Plaintiff has failed to demonstrate both the absence of a genuine issue of material fact and entitlement to judgment as a matter of law. Accordingly, Plaintiff's motion for summary judgment is denied. Defendant's cross motion for

summary judgment is granted, limited to counts two, four, six, and seven.  Defendant is directed to submit a form of order.

Dated: May 17, 2011

*/s/ Michael B. Kaplan*
Honorable Michael B. Kaplan
United States Bankruptcy Judge